Filed 8/10/22 P. v. Dunbar CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C094363 |
| Plaintiff and Respondent, | (Super. Ct. No. 62-177594A) |
| v. | |
| DAVID ROY DUNBAR, | |
| Defendant and Appellant. | |

Defendant David Roy Dunbar was convicted of several offenses he committed following a traffic stop. The trial court sentenced defendant to a jail term of four years and four months, which includes an upper term sentence. On appeal, defendant seeks to challenge various aspects of his case: the legality of the patdown search during the traffic stop, trial counsel's performance as constitutionally ineffective, the trial court's failure to remove counsel despite an irreconcilable conflict, and his sentence in light of new legislation that imposes specific requirements before an upper term may be imposed. We agree the matter must be remanded for resentencing, in all other respects, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Shortly before 1:00 a.m. on February 8, 2021, Sheriff's Deputy Matthew Byers observed a blue Saab with a broken headlight and an expired registration sticker driving on Interstate 80. As Deputy Byers followed the vehicle, the Saab abruptly moved across multiple lanes, traveling from the fast lane and pulling to a stop on the right shoulder. Deputy Byers activated his emergency lights and pulled in behind the Saab. He observed defendant get out of the car, walk to the passenger side of the Saab, open the door, and hand something to the passenger before walking to the back of the Saab. Deputy Byers approached defendant with his gun unholstered, pointed to the ground. He could see that defendant had a folding construction style knife in his right front pants pocket. Defendant showed signs of being under the influence of a stimulant, such as methamphetamine. After another officer arrived, Deputy Byers contacted his dispatch center and ran a records check on defendant, and learned that defendant's driver's license was expired and he was on probation from Santa Clara County. Based on defendant's signs of intoxication, the presence of the knife in his pants and the information he received from dispatch, Deputy Byers attempted to conduct a patdown search of defendant. Deputy Byers asked defendant to put his hands on the back of his head and interlace his fingers, to which defendant asked, "Why?" When Deputy Byers told defendant, because he was on probation, defendant pulled away from Deputy Byers's grasp and ran. He ran across all the lanes of Interstate 80 and jumped over the concrete barrier.

Deputy Byers and Deputy Brandon Bailey gave chase.[1] The officers repeatedly ordered defendant to stop but defendant refused to comply. Defendant ran back across the freeway to the driver's side of his car and unsuccessfully tried to enter the car.

---

[1] Deputy Bailey was the cover officer who arrived after Deputy Beyers initiated the stop.

2

Deputy Byers got defendant to the ground, but defendant continued to resist until a third deputy, Ryan Kemp, arrived and defendant was handcuffed.

Deputy Byers sustained injuries to his knees and shin. Deputy Bailey was injured when he tried to shove defendant by grabbing his jacket and instead fell to the ground.

After defendant's arrest, the deputies found a sheathed knife with a six-inch fixed blade attached to defendant's waistband. They also found the construction knife and a useable quantity of methamphetamine. A large hatchet and a round of ammunition were located in the driver's area of the Saab. Defendant's passenger, Erin McCuiston, also had a sheathed knife on her waistband and was in possession of methamphetamine and a methamphetamine pipe. Both defendant and McCuiston were arrested, and the officers had the Saab towed and impounded.

At trial, the parties stipulated that defendant previously had been convicted of a felony and was prohibited from being in possession of ammunition.

Defendant's mother testified at a jury trial on defendant's behalf and said the Saab belonged to her. She said that when she obtained access to the Saab in the impound lot, she found a purse with items belonging to McCuiston. She also found nine additional bullets in that purse. She took a picture of the items she found and sent the pictures to defense counsel. She then threw the bullets away.

The prosecution charged defendant with two violations of resisting an executive officer, in violation of Penal Code section 69, subdivision (a) (counts one & two),[2] one count of battery upon an officer with injury, in violation of section 243, subdivision (c)(2) (count three), carrying a dirk or dagger, in violation of section 21310 (count four), being a felon in possession of ammunition, in violation of section 30305, subdivision (a)(1)

_____

[2] Undesignated statutory references are to the Penal Code.

3

(count five), and possession of methamphetamine in violation of Health and Safety Code section 11377, subdivision (a) (count six).

Prior to trial, defendant filed a motion to suppress evidence pursuant to section 1538.5. The court denied the motion.

The jury found defendant guilty of counts one, two, four, and six. As to count three, the jury found defendant not guilty of battery upon an officer with injury but found him guilty of the lesser included offense of resisting a peace officer in the performance of his duties, in violation of section 148, subdivision (a)(1). The jury deadlocked on count five, and the court subsequently declared a mistrial and the People dismissed the count in the interest of justice.

Postverdict, the court heard and denied defendant's *Marsden* motion[3] and his motion for new trial based on ineffective assistance of counsel. The court then denied defendant probation and sentenced him to a four-year, four-month term to be served in county jail pursuant to section 1170, subdivision (h): the upper term of three years for the violation of section 69, subdivision (a) on count one; an eight-month consecutive term on count two (one-third the middle term for the violation of § 69, subd. (a)); an eight-month consecutive term on count four (one-third the middle term for the violation of § 21310); a concurrent 180-day term for the count three violation of section 148, subdivision (a)(1), stayed pursuant to section 654; and a 180-day concurrent term for the violation of Health and Safety Code section 11377, subdivision (a) on count six. The court ordered mandatory supervision for the final 16 months of the term imposed.

Defendant filed a timely notice of appeal.

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

4

## DISCUSSION

## I

## *Motion to Suppress*

Defendant argues that his patdown violated the Fourth Amendment because the totality of the circumstances demonstrated that the officer's decision to conduct a patdown was not based on a reasonable belief defendant posed a threat to the officer's safety and the trial court abused its discretion in denying his motion to suppress. He also argues that trial counsel was ineffective for failing to introduce the video of the traffic stop into evidence during the hearing on the suppression motion. The People contend this argument fails at the outset because the patdown never actually took place, as defendant fled before the officer could conduct it, and no evidence was seized pursuant to the patdown. The People also assert that defendant cannot show counsel's failure to introduce the video constituted ineffective assistance when the video was consistent with the officer's testimony. We agree with the People.

*A. Additional facts*

Prior to trial, defendant moved to suppress evidence on the basis that the patdown violated the Fourth Amendment. Defendant did not challenge the validity of the traffic stop or any of the officer's actions that occurred after defendant fled. On appeal, he limits his challenge to the propriety of the officer's decision to conduct a patdown based on the officer's belief that defendant was on probation.

Deputy Byers's testimony at the hearing on the motion to suppress was consistent with his trial testimony, as recounted above. When he approached defendant, he noticed a folding construction knife in defendant's right front pants pocket. Deputy Byers also observed objective signs of possible methamphetamine usage: defendant was fidgety and unable to stand still; he had what appeared to be bruxism with an involuntary grinding or clenching of his jaw; and his pupils were enlarged. When he asked defendant whether he was on probation, defendant said that he was not. However, a records check indicated

that defendant was on probation out of Santa Clara County for violations of sections 242 and 243. Deputy Byers told defendant to place his hands on the back of his head with his fingers interlaced. When defendant asked him why, Deputy Byers said because he was on probation. Defendant started to comply and then ran across the freeway.

The trial court denied the motion to suppress, finding there was sufficient justification for the patdown. The court specifically stated it disregarded the possibility that defendant was on probation as a justification for the patdown. Instead, the court relied on the totality of the circumstances to conclude that the officer had a legitimate concern for his safety where it was 1:00 a.m., defendant behaved erratically by abruptly changing lanes then jumping out of his car to go around and hand something to the passenger, the presence of a construction knife visible to the officer, and the fact that defendant appeared to be under the influence of methamphetamine.

*B. Discussion*

The Fourth Amendment protects against unreasonable searches and seizures. (U.S. Const., 4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1, 20.) After a vehicle stop, police officers may conduct a limited search of a suspect if they have reason to believe the suspect is armed and dangerous. (*Terry*, at p. 27.) Although a *Terry* search does not require probable cause, it is justified only when "specific and articulable facts . . . taken together with rational inferences from those facts," warrant a suspicion that a suspect is armed and dangerous. (*Id.* at p. 21.) The seizure of an item whose identity is already known involves no further invasion of privacy. (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 377.) However, "[i]f the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." (*Id.* at p. 373.) Similarly, under section 1538.5, a defendant may move to suppress as evidence any tangible or intangible thing obtained as a result of a warrantless search or an unreasonable seizure. (§ 1538.5, subd. (a).)

Here, the officer's attempt to conduct a patdown was thwarted by defendant's decision to flee across the interstate in the middle of the night. Moreover, no evidence was obtained at that point and there is no " 'fruit of the poisonous tree' " to suppress. (See *Wong Sun v. United States* (1963) 371 U.S. 471, 487-488.) Because no evidence was obtained as a result of the thwarted attempt to conduct a patdown, we need not address defendant's argument concerning the legality of the patdown search. (See *People v. Mattson* (1990) 50 Cal.3d 826, 850-851 [purpose of § 1538.5 is "only to exclude evidence obtained in violation of a defendant's state and/or federal (Fourth Amendment) right to be free of unreasonable search and seizure"], superseded on another ground by § 190.41.)

We note that defendant's decision to disobey by attempting to flee across the interstate on foot, then physically resist a lawful detention, provided independent probable cause for his arrest. (See *In re Andre P.* (1991) 226 Cal.App.3d 1164, 1169 [flight from an officer during a lawful investigatory stop is a sufficient for probable cause to arrest]; see § 148, subd. (a)(1).) Once arrested, the officers were justified in searching defendant. It was during this search that contraband was found. Defendant does not assert his arrest or the subsequent search violated his Fourth Amendment rights. (See *People v. Macabeo* (2016) 1 Cal.5th 1206, 1218 [when an arrest is supported by independent probable cause, a search incident to that arrest is allowed if it is supported by federal Fourth Amendment jurisprudence].)

Nor can we say that counsel's failure to introduce the video of the traffic stop at the hearing on the motion to suppress constituted ineffective assistance. As previously noted, the motion to suppress was based solely on the patdown. We have reviewed the video; it is not helpful to defendant. Consistent with the officer's testimony at the hearing on the motion to suppress, the video showed that the officer was not able to conduct the patdown and that no evidence was seized as a result of the patdown. Thus, the video would not have assisted defendant in his argument in any way. If anything, the

7

video would have clarified Deputy Byers's testimony regarding the timing of the recovery of the contraband, further demonstrating there was nothing to suppress. (See *People v. Mai* (2013) 57 Cal.4th 986, 1009 ["a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance"].)

## II

### *Marsden Motion*

Defendant argues that the trial court erred in denying his posttrial *Marsden* motion where there was sufficient evidence of a breakdown in communication between counsel and himself. He argues that the trial court failed to consider that an irreconcilable conflict had developed over trial, such that defendant was no longer listening to his attorney's advice. Because this breakdown was apparent after trial, defendant argues, counsel rendered ineffective assistance during sentencing. The People argue that the *Marsden* motion was untimely and, because the trial court had a sound basis for rejecting defendant's claims, defendant cannot show the trial court abused its discretion. We agree with the People.

*A. Additional Background*

After trial but before judgment and sentencing, defendant made an oral motion on his own behalf for a new trial based on ineffective assistance of counsel and requested substitution of counsel. The court conducted a *Marsden* hearing, during which defendant raised several complaints about the manner in which his counsel litigated his case.[4] He

---

[4] He claimed, inter alia, that his attorney failed to: request a bond hearing, get a statement from the passenger in his car, make additional objections at the suppression hearing, impeach the officers with inconsistencies in their reports, request material as to the arresting officer's record for use of excessive force pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, present additional evidence at trial, request defendant's medical records, and fully utilize the officer's body camera footage. He also claimed that

also asserted that counsel's communication with him hindered his own preparation for trial when counsel failed to provide transcripts of the section 1538.5 hearing and lied when conveying the settlement offer by the People.

Counsel responded to the allegations. He explained the decisions he made were dictated by the law, the facts, or appropriate strategy given the overall circumstances. Counsel argued that he used the information he was able to obtain from his investigation effectively, resulting in a hung jury on the possession of ammunition charge and defendant's ability to avoid a prison term. Regarding communication, counsel explained that he tried to go over the settlement offer with defendant, but defendant was confused by the interplay between a split sentence and custody credits. Counsel then related to the trial court that he did not think there was a valid posttrial motion to be filed and, at that point, "we kind of locked -- our ability to communicate went downhill from there." He stated that at a subsequent video visit, defendant was not interested in hearing what counsel had to say regarding the firearm form and wanted to do his own research. Defendant was interested in some of the possible sentencing options counsel presented but counsel said, "at that point, our communication had broken down to where we didn't really go over the terms in detail. I told him what I thought the terms would be. I'm not sure if he understood them."

The court denied the *Marsden* motion, finding it lacked merit. The court found defense counsel's performance was "very good," but that counsel just did not have much to work with at trial. The court also noted that if these issues were percolating along, defendant could have raised them at any time. Waiting until after conviction rendered the motion untimely.

---

counsel did not advocate on his behalf when he failed to object to the introduction of his knife without its sheath, or pursue a misdemeanor offense of resisting arrest.

9

*B.  Discussion*

A criminal defendant is entitled under the Sixth Amendment right to assistance of counsel to substitute another appointed attorney " ' " ' "if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." ' " ' " (*People v. Valdez* (2004) 32 Cal.4th 73, 95 (*Valdez*).)  A defendant who seeks to substitute court-appointed counsel on the basis of inadequate representation must be permitted to explain the basis of his or her contention and to relate specific instances of inadequate performance.  (*People v. Rodriguez* (2014) 58 Cal.4th 587, 623; see *Marsden, supra*, 2 Cal.3d at p. 123.)  "If the court holds an adequate hearing, its ruling is reviewed for abuse of discretion." (*Rodriguez, supra*, at p. 623.)

" 'A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense.' " (*Valdez, supra*, 32 Cal.4th at p. 95.)  The denial of a *Marsden* motion is therefore " ' "not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would 'substantially impair' the defendant's right to assistance of counsel." ' " (*Ibid*.) " 'Tactical disagreements between the defendant and his attorney do not by themselves constitute an "irreconcilable conflict." ' " (*Ibid*.)  Nor does a defendant's "claimed lack of trust in, or inability to get along with, an appointed attorney" compel, without more, the discharge of appointed counsel. (*People v. Crandell* (1988) 46 Cal.3d 833, 860 (*Crandell*), abrogated on another ground in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365.)  "A trial court is not required to conclude that an irreconcilable conflict exists if the defendant has not made a sustained good faith effort to work out any disagreements with counsel and has not given counsel a fair opportunity to demonstrate trustworthiness." (*Crandell, supra*, at p. 860, italics omitted.)

10

Applying these principles, we find that defendant has not shown the trial court abused its discretion in refusing his request to discharge his attorney and substitute counsel.

Two themes dominated defendant's *Marsden* motion. One was his disagreement with counsel's strategy in his case. Defendant presented a myriad of ways he perceived counsel's assistance to be ineffective and argued that, as a result, a new trial was warranted. Counsel responded to these assertions and the trial court addressed the points raised in the context of the motion for a new trial. The trial court ultimately found counsel was not ineffective and denied the motion for a new trial. (Cf. *People v. Michaels* (2002) 28 Cal.4th 486, 523 [affirming denial of *Marsden* motion where the defendant's principal objection was that his counsel "was managing the defense as a lead attorney should do, rather than deferring to defendant's opinions"].) Defendant does not challenge this aspect of the trial court's ruling on the *Marsden* motion. Nor does defendant challenge the trial court's ruling as to the untimeliness of his trial-related complaints within the *Marsden* motion. (See *People v. Lara* (2001) 86 Cal.App.4th 139, 151 [trial court retains discretion to deny a *Marsden* motion as untimely].)

Instead, defendant challenges the trial court's handling of the second element in the *Marsden* motion: the effective breakdown of communication. Defendant asserts that the trial court failed to consider that counsel agreed that there was an irreconcilable conflict between himself and defendant, which led to counsel's ineffectiveness at sentencing. We disagree that the record shows the court failed to consider this complaint, as both defendant and counsel were able to speak freely on the issue and the trial court addressed the overall complaint of ineffective assistance of counsel. We also disagree with the premise that there was an irreconcilable conflict, as that term is understood in the context of a *Marsden* request, such that it required individualized consideration apart from the ineffective assistance of counsel and new trial contexts. Here, although counsel had some difficulty explaining the settlement offer from the People, defendant never

11

stated that he did not ultimately understand the offer or that if he had understood, he would have accepted it. Instead, he asserted counsel was lying. The fact that defendant did not raise the issue of communication until after the verdicts were rendered strongly suggests that the distrust and breakdown in communication stemmed largely from defendant's displeasure at the guilty verdicts. Indeed, counsel confirmed that after the trial, his ability to communicate with defendant went downhill.

Nevertheless, counsel continued to meet with defendant to explain the firearm form, but defendant was not interested in his advice. Counsel perceived some interest by defendant in the sentencing possibilities, but it appears the conversation was one-sided with counsel attempting to explain the possibilities. Defendant's failure to make a sustained good faith effort to work out any disagreements with counsel did not require the court to conclude that an irreconcilable conflict existed. (See *Crandell, supra*, 46 Cal.3d at p. 860; accord *People v. Memro* (1995) 11 Cal.4th 786, 857 [" ' "[I]f a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment, and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law." ' [Citation]"].)

Moreover, defendant did not and cannot show that the failure to replace defense counsel substantially impaired his right to effective assistance of counsel at sentencing. Defense counsel did not repose in the courtroom during defendant's sentencing "like the now proverbial potted plant." (*People v. Taylor* (1992) 5 Cal.App.4th 1299, 1313.) Counsel advocated for defendant during sentencing and argued that the instant offenses stemmed from defendant's recent drug relapse. He urged the court to consider the fact that defendant needs inpatient treatment, noting that defendant had been accepted into such a program and planned to attend the program if the court would allow it. Counsel alternatively argued that the midterm would be appropriate in this case such that his sentence should be three years, four months, with one year in custody and two years, four

12

months on mandatory supervision—with some of that time spent in rehabilitation. Counsel also noted the letters of support from community members in support of his argument that the best place for defendant was in treatment within the community. Beyond the mere fact of a communication breakdown, defendant does not explain how counsel's performance at sentencing was constitutionally ineffective. (See *People v. Michaels, supra*, 28 Cal.4th at p. 523 [explaining there is no need to remove counsel where there was nothing in the record showing that counsel "would not provide adequate representation if he received defendant's cooperation"].)

Accordingly, we conclude that defendant has failed to show the trial court abused its discretion in denying the *Marsden* motion and has not demonstrated that the conflict with defense counsel jeopardized his constitutional right to the assistance of counsel. Because defendant has failed to show an abuse of discretion, his claim on appeal lacks merit.

### III

### *Penal Code section 1170*

Defendant argues we must remand the matter to permit the trial court to reconsider the upper term sentence in light of recent statutory changes that apply to him retroactively, because the new law "mandates the middle term as the presumptive sentence unless certain circumstances exist." The People agree that the recent amendments apply retroactively to defendant but disagree that resentencing is required. The People argue that because the trial court imposed the upper term based on defendant's recidivism, any error in the trial court's reliance on unproven prior convictions was harmless beyond a reasonable doubt.

We agree with the parties that recent legislation applies to defendant's judgment that is not yet final. (See *In re Estrada* (1965) 63 Cal.2d 740, 742.)

The court imposed the upper term of three years based on the facts and circumstances of the crime, defendant's criminal history, and his violations of probation

and parole, stating: "First of all, the defendant inflicted injury on a deputy. He was an active participant, and, in fact, the sole participant who is responsible for the crimes that were committed. [¶] He has multiple felony and misdemeanor convictions over a long period of time that now appear to be becoming more regular and more serious. He resisted multiple officers in the lawful performance of their duties, in fact, running across lanes of traffic at night on Interstate 80 with passing motorists and creating a serious risk of danger to the deputies when they fell to the ground as he resisted in the middle of a lane of traffic. [¶] Additionally, he -- the evidence show[s] that he was armed with a knife at the time. The Court can find no limiting or mitigating circumstances that would outweigh any of the factors just enumerated by the Court. The Court also notes that the defendant has, on multiple previous occasions, violated both probation and parole. He has a long record, including prior incidents and convictions for resisting arrest . . . ."

While this appeal was pending, Senate Bill No. 567 (2021-2022 Reg. Sess.) amended section 1170, subdivision (b), providing that a trial court may impose an upper term sentence only where there are aggravating circumstances that justify the imposition of a term exceeding the middle term and the defendant has either stipulated to the facts underlying those circumstances or those facts have been found true beyond a reasonable doubt. (§ 1170, subd. (b)(1)-(2); Stats. 2021, ch. 731, § 1, effective Jan. 1, 2022.) In making this determination, the "court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3); Stats. 2021, ch. 731, § 1.) "These amendments apply retroactively to [defendant] because his conviction was not final when this legislation took effect." (*People v. Flores* (2022) 75 Cal.App.5th 495, 500.)

In this case, two of the factors relied upon by the court were proven beyond a reasonable doubt when the jury found defendant guilty of carrying a dirk or a dagger and resisting arrest. (See Cal. Rules of Court, rule 4.421(a)(2), (c).) Accordingly, we have no constitutional concerns with defendant's upper term sentence. (See *People v. Black*

14

(2007) 41 Cal.4th 799, 812 ["as long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of *Apprendi* [*v. New Jersey* (2000) 530 U.S. 466] and its progeny, any additional factfinding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial"].)

Yet here the court relied upon additional factors that were not admitted by defendant, proven through certified records of conviction, or found true beyond a reasonable doubt by a jury. (§ 1170, subd. (b).) Specifically, the court relied on the additional aggravating circumstances of inflicting injury on a deputy, defendant being an active or sole participant responsible for the crimes, defendant having multiple prior convictions which were becoming more regular and more serious, defendant having prior probation and parole violations, and defendant creating a serious risk of danger to the deputies when he resisted them. As such, consideration of these other factors was improper under the newly amended statute. As such, we find the harmless error test in *People v. Watson* (1956) 46 Cal.2d 818, applies. (*People v. Epps* (2001) 25 Cal.4th 19, 29.) That test is whether, " 'after an examination of the entire cause, including the evidence,' [the reviewing court] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson, supra*, at p. 836; see also Cal. Const., art. VI, § 13.) As applied here, this requires a two-step analysis. First, we start by asking whether there is a reasonable probability that the facts underlying the improperly determined aggravating circumstances would have been established in a statutorily permissible manner, most notably, found true beyond a reasonable doubt if submitted to a jury, or court in a court trial. (*Watson, supra*, at p. 836; § 1170, subd. (b)(2).) Then, excluding any factors we cannot conclude would have been found true in a permissible manner, we again apply the test pronounced in *Watson*, and examine the entire cause to see whether it is reasonably probable that the trial court would have imposed a more favorable result, i.e., a more

15

lenient sentence. (See *People v. Price* (1991) 1 Cal.4th 324, 492 ["When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper"], superseded by statute on other grounds as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161-1165.) A reasonable probability of a more favorable result exists where the improper factor was determinative for the sentencing court or where the reviewing court cannot determine whether the improper factor was determinative. (*People v. Avalos* (1984) 37 Cal.3d 216, 233.)

After an examination of the record, we cannot determine whether the improperly considered factors were determinative in the trial court's selection of the upper term sentence in this case and conclude that the matter must be remanded for resentencing.

Here, the court imposed the upper term of imprisonment based, in part, on defendant's recidivism. The error here was twofold: no certified records of conviction were introduced to prove the existence and number of prior convictions, and the other factors relating to a qualitative assessment of his recidivism (i.e., the frequency and seriousness of prior offenses; performance on probation or parole) were not submitted to a jury. As to the first error, we find there is a reasonable probability that defendant's prior convictions would be proven in a statutorily permissible manner, as the existence of these prior convictions is easily verifiable through certified records, and defendant failed to challenge their existence when he had the opportunity to do so. Indeed, during trial, defendant stipulated to having a prior felony conviction. Additionally, the existence and number of his prior convictions were contained in the presentence report prepared for defendant's sentencing hearing. (Cal. Rules of Court, rule 4.421(b)(2).) When this information was discussed at the sentencing hearing, defendant did not dispute these facts nor did he object to their accuracy when the trial court relied on them to impose the upper term, and he had every incentive to do so in order to mitigate his sentence. (See *People*

*v. Epps, supra*, 25 Cal.4th at p. 29 [finding the denial of a statutory right to a jury trial on a prior conviction harmless where the only factual question for the jury was whether the prior convictions occurred, and defendant did not question this fact].) For these same reasons, defendant's prior performance on probation and parole would be objectively proven through certified records of convictions even if submitted to a jury. (Cal. Rules of Court, rule 4.421(b)(5).) Thus, there is a reasonable probability that this factor would have been found true beyond a reasonable doubt by a jury.

However, to the extent the remaining aggravating circumstances at issue in this particular case rest on a somewhat vague or subjective standard, we find it difficult to conclude with confidence that, had the issues been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court. By example, the circumstance relied on by the trial court that defendant's actions in resisting the officers created a serious risk of danger to them, is not one of those factors set forth in the rules, and the record does not reflect specific evidence of such risk, other than that inherent in running across the interstate, such that we can confidently conclude the jury would have made the same finding.

We also cannot conclude that there is a reasonable probability that a jury would have found true beyond a reasonable doubt that defendant's prior convictions were becoming more regular and/or serious over time. While defendant's record reflects upwards of 30 misdemeanor convictions between 1995 and the date of the current offense, he appears to have considerably fewer felony convictions; three, though they are rather serious, the most recent before this offense was in 2011. While we are mindful that the jury's convictions of felonies in this case could reflect an increase in seriousness, we also note that the jury acquitted defendant of arguably the most serious charge, felony battery upon a peace officer. In light of such, we cannot conclude that the jury would have found this aggravating factor true beyond a reasonable doubt.

17

The trial court also relied on an aggravating circumstance that defendant inflicted injury upon a peace officer; the jury's verdicts do not reflect such. The jury acquitted defendant of the battery on a peace officer charge and the section 69 charges do not include an element of injury that needed to be decided. Therefore, we cannot conclude there is a reasonable probability that the jury would have found this circumstance true beyond a reasonable doubt,

Lastly, the trial court relied on the circumstance that defendant was an active and sole participant responsible for the crimes committed. This is not a factor listed in the sentencing rules and while there is ample evidence that defendant set in motion the chain of events that culminated in these crimes, it is not clear how this circumstance would have been defined for the jury as an aggravating factor had it been submitted to them. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 843.) Given this uncertainty, we cannot conclude that there is a reasonable probability that the jury would have found beyond a reasonable doubt, that defendant was an active and sole participant responsible for the crimes committed.

Excluding consideration of the several factors for which we are unable to conclude the existence of a reasonable probability the jury would have found true beyond a reasonable doubt, we must next consider whether there is a reasonable probability that defendant would have received a more lenient sentence based on his prior convictions and his acts of carrying a knife and resisting a peace officer. The record does not clearly indicate that the trial court weighed these factors more heavily than the factors it impermissibly considered. Stated differently, the record does not disclose that the trial court would have exercised its discretion to impose an upper term sentence based only on these permissible aggravating factors. Because we cannot conclude that the trial court would have selected an upper term sentence based only on these factors, we conclude that remand is necessary to allow the trial court to exercise its discretion consistent with the recent amendments to section 1170.

18

## DISPOSITION

The judgment is affirmed. The sentence is vacated and the matter remanded for a full resentencing hearing consistent with amended section 1170.

_____/s/_____
EARL, J.

I concur:

_____/s/_____
KRAUSE, J.

I concur; as to Part III of the Discussion, I concur in the result

_____/s/_____
MAURO, Acting P. J.